MATTER OF VILLARBA-REYES

In DEPORTATION Proceedings

A-11481354

*Decided by Board July 27, 1962*

(1) An alien nonimmigrant enlisted abroad under the Act of June 30, 1950, as amended (Lodge Act), who returns to the United States as a member of the Armed Forces and is honorably discharged after less than five years of service, lacks the lawful admission for permanent residence required to qualify for naturalization under the provisions of that Act.

(2) Respondent's entry as a member of the Armed Forces did not, under section 284, Immigration and Nationality Act, give him any rights or privileges under Title II of that Act not otherwise granted, and, upon return to the United States as a member of the Armed Forces and discharge therefrom, he resumed the immigration status which was his prior to enlistment.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Remained longer.

Respondent is 30 years old, alien, single, a native and citizen of the Philippines. The special inquiry officer found respondent deportable on the above-stated charge, granted respondent voluntary departure, and entered an automatic order of deportation in the event that he ·fails to depart. Respondent did not depart, and he appeals to this Board.

On or about October 17, 1955 respondent was admitted to the United States at Guam temporarily as a contract laborer. He was employed as a clerk-typist, authorized to remain in the United States in that status until June 30, 1958. On July 17, 1957 respondent was voluntarily inducted into the United States Army, and he served until he was honorably discharged at Fort Monmouth, New Jersey on June 17, 1961. On December 11, 1961 respondent was informed that since the contract under which he was admitted to the United States had expired, he was granted until January 15, 1962 to depart voluntarily.

While in the Army respondent was transferred from Guam to Hawaii, and through the United States to Germany. While in Germany

768-456—65——3

he reenlisted on June 18, 1959. His Army record (Ex. 3) establishes that while in the service respondent received several commendations and the Good Conduct Medal, and an honorable discharge. Counsel states that respondent volunteered to reenlist at the expiration of his four years of service, but his reenlistment was not accepted, because the Army is now authorized to accept as enlistees only citizens or those who have declared an intention to become naturalized.

Respondent seeks to qualify for the benefits of the Act of June 30, 1950, 64 Stat. 316, as amended by the Act of June 27, 1952, 8 USCA 1440, note, Section 402(e) of the Immigration and Nationality Act.[1] Counsel's Notice of Appeal states, "The respondent's reenlistment in the United States Army, while serving in Germany, was within the purview of the Act of June 30, 1950, and conferred upon him the status of one lawfully admitted for permanent residence upon his entry to the United States pursuant to military orders. Having accepted his reenlistment pursuant to the terms of the Act, respondent has a vested right to continue to serve for five years providing his service remained honorable. Upon the conclusion of four years service, the respondent sought to reenlist for a further term of service. The refusal of the military authorities to accept his application for reenlistment was improper and constituted a deprivation of due process of law."

The Lodge Act, as it is referred to, expired only two weeks after respondent's reenlistment in Germany. The "refusal" of the Army to accept respondent for a third two-year period was dictated by the fact that Congress after repeatedly extending the Act, permitted it to expire on July 1, 1959. After that date there could be no further acceptance of enlistments from aliens abroad. The law did not create a "vested right" in any alien to continue to serve in the United States Army. The statute clearly provided that the right to be deemed to have been lawfully admitted to the United States for permanent residence did not accrue to an alien until he fulfilled all the conditions precedent of the statute, including the five or more years of military service.

The terminology and purpose of the Act of June 30, 1950 are so clear that it should not be necessary to cite authority. Several cases have arisen under this and similar statutes. *Dela Cena v. United States*, 249 F. 2d 341 (9th Cir. 1957), held, among other things, that the benefits of the Act were not available to a citizen of the Philippines who served almost three years in the Army in the Philippines and Okinawa, retired, then enlisted, again in the Philippines, as a seaman in the

---

[1] The period of authorized enlistment was extended to June 30, 1957, by the Act of July 12, 1955 (69 Stat. 297), and again extended to July 1, 1959, by the Act of July 24, 1957 (71 Stat. 311).

United States Navy. He entered the United States under naval orders and was still here when he filed a petition for naturalization a year and a half after his enlistment in the Navy. Dela Cena contended that he had been "lawfully admitted to the United States." The court denied the petition, stating that there was an "absence of the Congressional intent that his coming in under Navy orders made him an immigrant admitted for permanent residence." The court made it clear that the appellant must comply with *all* the requirements of the statute, including an honorable discharge "after completion of five or more years of military service."

*In re Chow's Petition*, 146 F. Supp. 437 (S.D.N.Y., 1956), arose under the Act of June 30, 1953, P.L. 86, 83d Congress, 8 U.S.C.A., 1440a, which provided for naturalization of an alien who served 90 days in the Armed Forces between June 24, 1950 and July 1, 1955, and who had been "lawfully admitted to the United States" and had been "physically present within the United States for a single period of at least one year at the time of entering the Armed Forces". Chow was a seaman who was illegally in the United States and enlisted in the United States Army on December 12, 1952 while released on bond by the Immigration and Naturalization Service. He served two years in the United States Army, including service overseas. On his return he was permitted to enter the United States without a visa as part of the Armed Forces and was then honorably discharged. Chow contended that his entry as a member of the United States Army constituted a lawful admission to the United States within the meaning of Public Law 86. The court traced the congressional history of that Act, and put special emphasis on the meaning of the word "entry", as distinguished from the phrase "lawfully admitted." The court asked (p. 490), "Does an alien serviceman who is returning to the United States in the uniform of the Armed Forces enter the United States in either an immigrant or nonimmigrant status?" and then quoted section 284 of the Immigration and Nationality Act in toto.[2] It stated that this section explicitly declared that the privilege of entering in the uniform of the Armed Forces does not confer upon an alien member any rights not otherwise specifically granted by the Immigration and Nationality Act of 1952, and further said, "If it had been intended that

---

[2] Section 284, I. & N. Act provides: "Nothing contained in this title shall be construed so as to limit, restrict, deny, or affect the coming into or departure from the United States of an alien member of the Armed Forces of the United States who is in the uniform of, or who bears documents identifying him as a member of, such Armed Forces, and who is coming to or departing from the United States under official orders or permit of such Armed Forces: *Provided*, That nothing contained in this section shall be construed to give to or confer upon any such alien any other privileges, rights, benefits, exemptions, or immunities under this Act, which are not otherwise specifically granted by this Act."

an alien who was a member of the Armed Forces could, by returning with the Armed Forces, acquire a 'lawful admission' for naturalization purposes, Public Law 86 would have so provided." The court explained that Public Law 86 granted naturalization to an alien who had been *lawfully admitted* to the United States if he had served between 1950 and 1955 for a period of not less than 90 days, whereas Public Law 597, 54 Stat. 316 (with which we are concerned here), providing for the naturalization of aliens enlisting in the regular Army "after completion of five or more years of military service", was to apply to an alien who enlisted in the United States Army while in Europe. The court held that Chow was not eligible for naturalization under either statute, citing *Petition of Leuthold*, 116 F. Supp. 777 (D.C.N.J. 1953).

*Petition of D'Auria*, 139 F. Supp. 525 (D.C.N.J. 1956), held the entry into the United States of an alien in the Armed Forces is not such a "lawful admission" as came within the meaning of Public Law 86. The court found D'Auria not eligible for naturalization, despite two years in the United States Army, including duty overseas from December 28, 1953 to May 29, 1955. See also *Petition of Santos*, 169 F. Supp. 115 (D.C.N.Y. 1958).

This Board followed *Dela Cena* in *Matter of G—*, 8 I. & N. Dec. 21 (B.I.A. 1958). A native of Bulgaria enlisted in the Armed Forces in Europe. He entered the United States and was then given an undesirable discharge before completing five years' service. We held he was not eligible for the benefits of the Act of June 30, 1950, had not been lawfully admitted for permanent residence, and we ordered him deported on a no-visa charge. He refused to apply for voluntary departure.

It may be accepted, then, as established, that respondent's departure from and return to the United States as a member of the Armed Forces had no effect upon his admission status, because he had not completed five or more years of military service. While in the Armed Forces he was in a "suspended" status. When he became detached from the Armed Forces, for whatever reason, he resumed the status which was his prior to his enlistment. This holding is dictated and required by the proviso contained in section 284 of the Immigration and Nationality Act.

Counsel states that in *Matter of G—*, *supra*, and in *Matter of Zefi*, unrep., A-11006046 (B.I.A. July 21, 1959), the Board ordered deportation on the "no visa charge". He quotes *Zefi* as holding specifically that the "remained longer" charge was not a proper one (oral argument, p. 2). Counsel admits that there is no practical difference to the alien between a "no-visa" charge and a "remained longer" charge, but states that the legally sustainable and proper charge here is "no visa".

There is a difference between *G—* and *Zefi* and the instant case. G— and Zefi enlisted in the Armed Forces abroad, and had made no entry prior to their entries with the Armed Forces. They admitted entering with the intention to remain. In those cases a "no-visa" charge was the correct one. In *Zefi* we stated that the alien was entitled to an opportunity to leave voluntarily in accordance with the requirement of *U.S. ex rel. Sommerkamp* v. *Zimmerman*, 178 F. 2d 45 (3rd Cir. 1949), and that he must be given this opportunity before he could be found to have "made an entry" into the United States. Once he was given the opportunity to depart voluntarily, and failed to avail himself of it, he could have been deported either on a "no-visa" or a "remained longer" charge. It happened that the order stated a no-visa charge against Zefi; there was no specific holding by this Board that a "remained longer" charge was not a proper one.

Villarba-Reyes entered the United States at Guam as a nonimmigrant where he was employed for almost two years before he joined the Armed Forces. Section 284 relieved him of the limitations and restrictions of Title 2 *only* while he was "in the uniform of, or bears documents identifying him as a member of, such Armed Forces". This is the meaning of the proviso in section 284 that nothing contained in that section shall be construed to give any such alien rights, privileges, *etc.* which are not otherwise specifically granted by this Act. When he ceased to be a member of the Armed Forces he returned to his status as a contract worker admitted to the United States as a nonimmigrant for a specified period.

Respondent has been granted voluntary departure. By his failure to depart he became a contract worker who has "remained longer", and the charge set forth in the order to show cause is the correct one. We have no authority to confer the benefits of section 402(e), as amended, upon an alien who has been honorably discharged after only four years of military service, even though it was his desire to continue in the career service. The appeal must be dismissed.

**ORDER:** It is ordered that the appeal be and is hereby dismissed.