**Matter of the Petition for Naturalization of George SING, also known as Ah Nee Sing.**

No. 121819.

United States District Court
N. D. California, S. D.

June 30, 1958.

Garry, Dreyfus, McTernan & Keller, San Francisco, Cal., for petitioner.

Daniel H. Lyons, Naturalization Examiner, San Francisco, Cal., for United States.

OLIVER J. CARTER, District Judge.

The petitioner is a native of Shanghai, China. He was admitted to the United States as an alien crewman on January 16, 1947, subject to the provisions of former 8 U.S.C. § 203(5), now 8 U.S.C.A. § 1282. He remained in the United States longer than the 29 days allowed him under the statute, and did not ship out again until October 15, 1951. He made two more trips and was again admitted to the United States on November 10, 1952 as an alien crewman, and again remained for longer than 29 days. He was inducted into the Army on June 26, 1953, and served for almost 23 months, until May 18, 1955. He was given a general discharge under honorable conditions, and filed this petition for naturalization on December 21, 1955.

The petitioner has applied for naturalization under the provisions of 8 U.S. C.A. § 1440a, wherein it is provided:

"Notwithstanding the provisions of sections 1421(d) and 1429 of this title, any person, not a citizen, who, after June 24, 1950, and not later than July 1, 1955, has actively served or actively serves, honorably, in the Armed Forces of the United States for a period or periods totaling not less than ninety days and who (1) having been lawfully admitted to the United States for permanent residence, or (2) having been lawfully admitted to the United States, and having been physically present within the United States for a single period of at least one year at the time of entering the Armed Forces, may be naturalized * * * ".

The petitioner has fulfilled all of the requisites for naturalization set out in this statute. The only problem before the Court is whether the petitioner's lawful entry and physical presence within the United States must be immediate and consecutive with his entry into the armed forces.

The same problem was presented in the Matter of Frank, D.C.S.D.N.Y.1956, 143 F.Supp. 82, where it was held that the period of physical presence upon which the petitioner relied did not have to precede immediately his entry into the armed forces.

The Naturalization Examiner has relied upon the case of United States v. Boubaris, 2 Cir., 1956, 244 F.2d 98, and has asserted that this decision makes the Frank opinion no longer valid as a precedent.

Since the submission of this matter the cases of United States v. Chan Chick Shick (United States v. Tak Shan Fong), 2 Cir., 1958, 254 F.2d 4, petition for cert. filed June 16, 1958, (No. 1076), have been reported in one opinion. This opinion affirms Boubaris and holds that 8 U.S.C.A. § 1440a requires that the single period of physical presence of at least one year be immediately consecutive to the lawful admission required by that section. Neither Boubaris nor Chan mention Frank, or in any way purport to overrule Frank. This is so because Frank on the one hand, and Boubaris and Chan on the other hand discuss different factual situations and have different legal implications. In Boubaris and Chan there never was physical presence in the United States for at least one year immediately following a lawful entry, while in Frank, as in the present case, there was physical presence in the United States for more than one year immediately following a lawful entry. In both Frank and the present case the more than one year's physical presence immediately following a lawful admission did not immediately precede entry into the armed forces. This question was not present in, nor discussed in Boubaris and Chan. Therefore the cases must be distinguished. It should be noted further that in Boubaris and Chan that the period of physical presence used immediately followed an unlawful entry, while this is not the situation in Frank or the present case.

The question is whether Frank correctly decided that physical presence for at least one year immediately following a lawful entry comes within the section when such period of physical presence does not immediately precede military service. I conclude that it did. The pertinent portion of the section merely states "having been lawfully admitted to the United States, and having been physically present within the United States for a single period of at least one year at the time of entering the Armed Forces, * * * ". Here petitioner had had a period of physical presence in the United States for more than one year following a lawful entry which did not immediately precede his entry into military service, because it was necessary to ship out on vessels from time to time after his period of physical presence had been established. It should be noted also that after each trip he was lawfully admitted to the United States, although after the last admission he was only physically present for 231 days immedi-

# 924

ately prior to induction into military service. In this situation petitioner has fulfilled the requirements of the statute. He had had the required period of physical presence following a lawful entry "at the time of entering the Armed Forces." If Congress had intended that the required period of physical presence immediately precede the entry into military service it would have said so in unmistakable terms, as it did in 8 U.S.C.A. § 1427(a) (the basic provision for residence for naturalization), when it said:

> "No person * * * shall be naturalized unless such petitioner, (1) *immediately preceding* the date of filing his petition for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years." (Emphasis added.)

■ The legislative history of the statute is of some assistance here. See H.R. 233, 83d Cong., 1st Sess. (1953). It appears that the legislation was enacted "to provide for the expeditious naturalization of aliens lawfully admitted into the United States as immigrants or nonimmigrants," who honorably served in the Armed Forces during the period beginning June 25, 1950, and terminating on June 30, 1955. And the legislation was "patterned generally after legislation * * * to enable aliens serving honorably in the Armed Forces of the United States during World War II to qualify for naturalization," and was designed, *among other things,* to deal with the complicated "case of the alien admitted temporarily who may return from honorable front line service in the ranks of the Armed Forces of the United States to find himself confronted with an order of deportation." While these excerpts from the legislative history are not decisive, they are certainly indicative of a broad purpose to permit naturalization of persons who served during the appropriate period, and to favor a friendly and liberal interpretation, rather than a narrow and restricted one.

■ The petitioner has fulfilled the requirements of 8 U.S.C.A. § 1440a and is entitled to become a naturalized citizen of the United States.

Accordingly, the petition will be, and the same is hereby granted, and petitioner will be admitted upon taking the required oath.