**In re Petition for Naturalization of Wilfredo Lafrades ZAMORA.**

**No. 8736.**

United States District Court
S. D. California.

Aug. 21, 1964.

---

16. See Note 6, supra.

17. Section 46–150.15, S.C.Code 1962, noted supra.

18. N. L. R. B. v. Greensboro Coca Cola Bottling Co., 180 F.2d 840.

19. McNair v. C. I. R., 250 F.2d 147.

20. See Day v. Day, 216 S.C. 324, 58 S.E. 2d 83; Stephens v. Hendricks, 226 S.C. 79, 83 S.E.2d 634.

Wilfredo Lafrades Zamora, pro se.

Melvin K. Anderson, Gen. Atty., Nationality for Immigration and Naturalization Service, San Diego, Cal.

WEINBERGER, District Judge.

The petition of Wilfredo Lafrades Zamora for naturalization is before the Court, and the Immigration and Naturalization Service recommends the petition be granted.

The facts as evidenced by the petition and as presented by Melvin K. Anderson, General Attorney-Nationality, of the Immigration and Naturalization Service, show that Zamora's petition was filed August 11, 1964 under Section 329 of the Immigration and Nationality Act (8 U.S.C.A. § 1440); that Zamora entered the United States Navy on August 28, 1953, served continuously in honorable and active-duty status to date, and that he is still in such status; his original enlistment took place at Sangley Point, Cavite, Phillippine Islands and he re-enlisted at the same place on August 31, 1956, and while within the United States, at San Diego, California, he re-enlisted on June 5, 1962.

Section 1440 of Title 8 U.S.C.A., reads in pertinent part:

"(a) Any person who, while an alien or a noncitizen national of the United States, has served honorably in an active-duty status in the military, air, or naval forces of the United States during either World War I or during a period beginning September 1, 1939, and ending December 31, 1946, or during a period beginning June 25, 1950, and ending July 1, 1955, and who, if separated from such service, was separated under honorable conditions, may be naturalized as provided in this section if (1) at the time of enlistment or induction such person shall have been in the United States, the Canal Zone, American Samoa, or Swains Island, whether or not he has been lawfully admitted to the United States for permanent residence, or (2) at any time subsequent to enlistment or induction such person

shall have been lawfully admitted to the United States for permanent residence."

It appears that petitioner meets the requirements of the statute in that he has served honorably in an active-duty status in the Naval forces of the United States during one of the periods specified in the Section, to-wit, "during a period beginning June 25, 1950, and ending July 1, 1955", and that at the time of enlistment he was in the United States.

The facts in this case are similar to those related in Petition for Naturalization of Rolando Reyes Convento, reported at 210 F.Supp. 265, (District of Columbia, District Court, 1962) which decision was affirmed by the Court of Appeals of said Circuit on July 7, 1964, in United States of America v. Rolando Reyes Convento, 336 F.2d 954. Convento originally enlisted in the United States Navy at Sangley Point, Cavite, Philippine Islands, July 17, 1953, and had served continuously and honorably, in active-duty status from such date and was still so serving at the time of his petition, having re-enlisted at San Diego, California, on July 12, 1957.

In sustaining the action of the District Court granting Convento's petition for naturalization, Chief Judge Bazelon, speaking for the Court of Appeals, said:

"Easing naturalization requirements for those who have served our country in wartime is a congressional policy of long standing. It is not simply a matter of reward; it is also a recognition that no further demonstration of attachment to this country and its ideals is necessary. Since appellee's case is within this congressional aim, the statute should not be read restrictively to bar him unless it is expressly commanded.

"The Government argues that the words of the statute, literally read and against the background of legislative history, require his exclusion. While syntax may be better preserved by insisting that the enlistment between June 25, 1950 and July 1, 1955 be the one which occurs in

the United States, the words of the statute do not compel it. And there is no indication in the legislative history that Congress faced the problem of re-enlistments.

"In the absence of the clearest indication that Congress intended to confer well-merited benefits in arbitrary and niggardly fashion, we must assume that it did not. This is the view adopted by the Court of Appeals for the Ninth Circuit in Villarin v. United States, 307 F.2d 774 (1962), and by Judge Hart below. I therefore join in affirming the judgment."

We are impressed with the reasoning of the opinion from which we have just quoted, and have found no pronouncement of our own Circuit to bind us to a contrary view.

Upon the recommendation of the Immigration and Naturalization Service of this Division and District, and the authority of the decision of the Court of Appeals for the District of Columbia in United States of America v. Rolando Reyes Convento, supra, we shall grant the applicant's petition for naturalization.